Filed 11/24/20 P. v. Puckett CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DURRELL ANTHONY PUCKETT,<br><br>    Defendant and Appellant. | B300857<br><br>Los Angeles County<br>Super. Ct. No. MA074403 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge. Affirmed.

Christopher L. Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Durrell Anthony Puckett pled not guilty by reason of insanity to biting off a corrections officer's finger. During his sanity trial, he testified that the attack occurred while he was unconscious. The trial court directed a verdict for sanity, which defendant challenges on appeal. Because defendant did not present substantial evidence of a nexus between his mental illness and his unconsciousness, we affirm.

# PROCEDURAL BACKGROUND

By amended information dated December 20, 2018, defendant was charged with assault by a life prisoner (Pen. Code,[1] § 4500; count 1) and aggravated mayhem (§ 205; count 2). The information alleged 11 strike priors (§§ 667, subds. (b)–(j), 1170.12) and one serious-felony prior (§ 667, subd. (a)(1)). Defendant pled no contest and not guilty by reason of insanity to both counts and admitted the allegations.

After a jury trial on the issue of sanity at which defendant testified in his own defense, the court granted the prosecution's motion for a directed verdict of sanity. The court sentenced defendant to 30 years to life—a third-strike term of 25 years to life for count 1 plus five years for the serious-felony prior, to run consecutively. The court stayed count 2 under section 654.

Defendant filed a timely notice of appeal.

---

[1] All undesignated statutory references are to the Penal Code.

2

## FACTUAL BACKGROUND

### 1. Attack on Officer Moran

On May 29, 2018, defendant was in court, sitting at counsel table, waiting for his criminal case to be called.[2] Nearby, the prosecutor told defense counsel that his office had a policy against making initial plea offers in cases involving life sentences; the prosecutor asked defense counsel to speak to defendant and make the People an offer instead. The prosecutor told defense counsel to "make it a high offer because Mr. Puckett is a rapist." In response, defense counsel joked, "No, he's a therapist."

Meanwhile, a deputy attorney general was also discussing defendant's pending case with the prosecutor. The deputy attorney general laughed about an indecent exposure defendant had committed in prison—and said it was more offensive than a typical violation of section 314.

In response, defendant became agitated, began using profanity, and muttered, "Bitch D.A. … You can't say that about me." Then, defendant looked at the prosecutor and said, "Fuck you, motherfucker. You want to talk shit about me? Bitch-ass motherfucker. Fuck you."

Corrections officer Manuel Moran, who was standing next to defendant, told defendant to calm down. Moran told him that if he didn't calm down, he would be removed from the courtroom. But defendant replied, "Fuck that guy. He wants to talk shit about me, I'm going to talk shit about him. He wants to tell

---

[2] That case is not at issue in this appeal.

3

people I'm a piece of shit and he ain't going to offer me no deal, fuck him."

Moran then suggested to defendant that they wait outside the courtroom. Defendant responded: "Try to get me out of this chair, you motherfucker."

When Moran grabbed defendant's shoulder to lead him out of the courtroom, defendant lunged from his chair. Defendant hit Moran in the chest and bit off the tip of Moran's finger. Moran was treated at a hospital and underwent multiple surgeries. A video of the incident was played for the jury.

## 2.     Uncharged Conduct

Approximately two months later, defendant was being transported to another prison when he attacked a corrections officer by hitting and biting the officer. The officer suffered bite marks to the right arm.

## 3.     Psychiatric Testimony

Dr. McCoy Haddock, a forensic neuropsychologist, testified that defendant had been diagnosed with schizoaffective disorder (bipolar type), persistent depressive disorder, and antisocial personality disorder. It was also possible defendant suffered from traumatic brain injury stemming from being shot in the head when he was 13 years old.

Psychologist Michael Musacco testified that defendant suffered from bipolar disorder and a personality disorder. Defendant told Musacco that at the time of the incident here, he had tunnel vision and "lost it." Defendant said he did not even know he had bitten off Moran's finger, and his memory of the incident came from seeing the courtroom video later. Defendant expressed remorse for his behavior because Moran had not done

4

anything to him; defendant was angry at the prosecutor, not at Moran. Notably, defendant did not express remorse over his assaults on other officers because he felt they deserved it. This time, defendant described a different dynamic.

### 4. Defendant's Testimony

Defendant testified on his own behalf. He had been convicted of kidnapping, robbery, criminal threats, and forcible rape. He had been diagnosed with "bipolar without the schizophrenic" and antisocial personality disorder.

On the day of the attack, defendant overheard the prosecutor talking to a lady in court and telling her that defendant was sick and needed to be in jail forever; the only deal he would get was 20 years or more. He heard the prosecutor laughing at his criminal history and became angry.

Defendant remembered that Moran told him to get up and touched him to move him. In response, defendant experienced tunnel vision and blacked out. He had no memory of biting Moran—and was surprised to learn he'd bitten off Moran's finger; he didn't realize he was that strong. Defendant only began to recall the events when he saw the video of the attack and someone explained what had happened.

Defendant admitted that he had a history of biting corrections officers. On those other occasions, however, he had bitten the officers to defend himself from their beatings; this time, he blacked out and didn't remember doing it at all. He expressed remorse for hurting Moran: Moran "took the hard end of the stick for something he didn't do."

## DISCUSSION

Defendant contends the court erred by granting the prosecution's motion for a directed verdict of sanity because it applied the wrong test for insanity; it applied the wrong standard of review; and there was substantial evidence from which the jury could find he was insane during the assault.

### 1. Legal Principles and Standard of Review

" 'Under California's statutory scheme, "[p]ersons who are mentally incapacitated" are deemed unable to commit a crime as a matter of law. [Citation.] Mental incapacity under section 26 is determined by the *M'Naghten* test for legal insanity provided in section 25, subdivision (b). [Citations.]" (*People v. Powell* (2018) 5 Cal.5th 921, 955 (*Powell*).) Under *M'Naghten*, insanity is established if, based on a mental disease or defect, "the defendant was unable **either** to understand the nature and quality of the criminal act, **or** to distinguish right from wrong when the act was committed.' [Citation.]" (*Ibid.*, bold added; *People v. Severance* (2006) 138 Cal.App.4th 305, 321–322 (*Severance*).)

"In a sanity trial, the burden is on the defendant to prove insanity by a preponderance of the evidence. [Citations.]" (*Powell, supra*, 5 Cal.5th at p. 955.) If the defendant fails to present substantial evidence to support his claim, the trial court may remove the issue from the jury and direct a verdict of sanity. (*Severance, supra*, 138 Cal.App.4th at pp. 315–318.)

In deciding whether evidence is "substantial" in this context, the court views the evidence in the light most favorable to the defendant to determine its bare legal sufficiency. (See *People v. Vasquez* (2018) 30 Cal.App.5th 786, 792.) Thus, the court may not evaluate the credibility of witnesses, a task for the

jury, and uncertainty about whether the evidence is sufficient should be resolved in favor of the accused. (*Ibid*.) Even evidence that is unconvincing or subject to justifiable suspicion may constitute substantial evidence. (*Ibid*.)

We review the court's directed verdict de novo. (*Severance, supra*, 138 Cal.App.4th at p. 319.) In doing so, we perform the same substantial evidence analysis required of the trial court. That is, "we look for substantial evidence from which the jury reasonably could have found defendant was *not* sane. If we find such evidence, then a directed verdict of sanity was improper." (*Id*. at p. 320.)[3]

## 2.    There was no substantial evidence of insanity because there was no evidence defendant's mental illness *caused* his blackout.

As discussed, the question before us is whether defendant offered substantial evidence from which a jury could reasonably conclude that, based on a mental disease or defect, he was incapable of knowing or understanding the nature and quality of his actions when he attacked Moran. (*Severance, supra*, 138 Cal.App.4th at p. 322.)

---

[3] As defendant notes, because our review is de novo, we need not address whether the court below applied the wrong standard of review or based its ruling on the wrong test for insanity. (*Severance, supra*, 138 Cal.App.4th at p. 321 ["Because we review the trial court's ruling de novo, … the court's mistake in this regard does not compel reversal. If we were to conclude the evidence, viewed in the proper light, was sufficient for a jury to reasonably find defendant was insane, then we would reverse the directed verdict. Because we conclude there was no such substantial evidence, however, we will affirm the verdict, having properly performed the task the trial court should have performed in the first place."].) Therefore, we do not reach those issues.

Defendant argues that he was unconscious during the attack, and, therefore, was incapable of understanding the nature and quality of his actions.[4] We agree that, when viewed in the light most favorable to the defense, defendant's testimony constituted substantial evidence that he was unconscious when he bit Moran. And we agree that the testimony by Haddock and Musacco amounted to substantial evidence that defendant suffered from a mental disease or defect—namely, bipolar schizophrenia. But defendant points to no evidence from which the jury could infer that his mental illness *caused* his unconsciousness, and our review of the record has revealed none. Because the record offers no support for this critical link, we conclude there was no substantial evidence defendant was insane when he attacked Moran.

---

[4] The intersection of unconsciousness and insanity is a complicated and evolving area of the law. (See *People v. James* (2015) 238 Cal.App.4th 794, 805–810.) We assume for purposes of this opinion, however, that an unconscious defendant is incapable of knowing or understanding the nature and quality of his acts under *M'Naghten*.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.